UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SALEHOO GROUP, LTD., <br><br> Plaintiff, <br><br> v. <br><br> ABC COMPANY, et al., <br><br> Defendants. | CASE NO. C10-0671JLR <br><br> ORDER GRANTING MOTION TO QUASH SUBPOENA |

## I. INTRODUCTION

This matter comes before the court on Defendant John Doe's motion to quash subpoena (Dkt. # 9). Doe is the anonymous owner and operator of the website <www.salehoosucks.com>, a purported Internet "gripe site" dedicated principally to criticism of Plaintiff SaleHoo Groups, Ltd. ("SaleHoo"). Doe requests that the court quash a subpoena served by SaleHoo on GoDaddy.com, Inc. ("GoDaddy") seeking to learn Doe's identity. Having considered the motion, as well as all papers filed in support

ORDER- 1

1  and opposition, and deeming oral argument unnecessary, the court GRANTS the motion
2  (Dkt. # 9) and QUASHES the subpoena.

3                    II.    BACKGROUND

4       Doe, an individual of unknown citizenship and residence, owns, operates, and
5  created an Internet gripe site at <www.salehoosucks.com>. The home page of the
6  website identifies itself as an anti-SaleHoo website dedicated to exposing the "truth"
7  about SaleHoo. (Levy Aff. (Dkt. # 10) Ex. A (home page); Lowe Decl. (Dkt. # 14) Ex. 2
8  (home page).) The website claims that SaleHoo threatens individuals who post
9  unfavorable information about SaleHoo with defamation lawsuits and thus "there is no
10 way to get true unbiased reviews of SaleHoo." (Levy Aff. Ex. A.) SaleHoo purports to
11 fill this void by posting "honest reviews" of SaleHoo. (*Id*.) Other pages of the website
12 feature criticism of SaleHoo, including a negative review of SaleHoo by Terry Gibbs and
13 numerous "reader comments." (Levy Aff. Ex. C (Gibbs Review) & Ex. G (reader
14 comments); Lowe Decl. Ex. 13 (Gibbs Review) & Exs. 3-4 (reader comments).) The
15 website states that Mr. Gibbs's review, titled "Is Salehoo A Scam? You Decide!", was
16 originally posted on Mr. Gibbs's website, but later moved to <www.salehoosucks.com>.
17 (Levy Aff. Ex. C.)

18      The <www.salehoosucks.com> website also includes links to commercial
19 websites. (Lowe Decl. Ex. 5-12.) For example, the home page includes a link to a "free
20 quiz" to "test your eBay knowledge" and "help you earn more money in your eBay
21 auctions." (Lowe Decl. Ex. 2.) The "free quiz" link takes users to a quiz on another
22

1  website. (Lowe Decl. Ex. 6.) The website sells *The Auction Revolution*, a book written
2  by Mr. Gibbs, and other services. (Lowe Decl. Ex. 7-11.)
3      SaleHoo, which owns the trademark SALEHOO, filed this lawsuit for trademark
4  infringement, false designation of origin, unfair competition, and defamation. (Am.
5  Compl. (Dkt. # 12) ¶¶ 5, 7-21.) SaleHoo is a New Zealand limited liability company that
6  offers a database of wholesalers and brokers of goods that can be sold on eBay, and sells
7  memberships that authorize access to the database. (Mot. at 2.) SaleHoo explains that
8  the SALEHOO mark is used "in connection with computer software for collecting
9  product market data on the Internet and the provision of online services featuring product
10 sourcing and business information related to online trading and auctions." (*Id*. ¶ 5.)
11     SaleHoo moved for immediate discovery in this action to identify the owner of the
12 <www.salehoosucks.com> website. (Dkt. # 2.) The court granted leave to take
13 immediate discovery. (Dkt. # 5.) SaleHoo served a subpoena on GoDaddy, who in turn
14 gave notice of the subpoena to Doe. (Levy Decl. ¶ 9 & Ex. H (subpoena).) Doe now
15 moves to quash the subpoena.
16                    **III.   JURISDICITON**
17     This court has subject matter jurisdiction based on federal question jurisdiction
18 and supplemental jurisdiction. It is less clear, however, whether the court has personal
19 jurisdiction over Doe. Doe argues that the court lacks personal jurisdiction because the
20 <www.salehoosucks.com> website is a passive website and SaleHoo has not alleged the
21 existence of other contacts with Washington. These are serious jurisdictional concerns.
22 *See Holland Am. Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("We

consistently have held that a mere web presence is insufficient to establish personal jurisdiction."); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416-20 (9th Cir. 1997). Nevertheless, because Doe's motion is not a properly-noted motion to dismiss, the court will treat the factual allegations in SaleHoo's amended complaint as uncontested and deems them minimally sufficient for present purposes. *Cf. Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (in determining whether a plaintiff has met its burden to make a prima facie showing of jurisdiction in response to a motion to dismiss, the court must accept uncontroverted allegations in the complaint as true).

## IV.   ANALYSIS

The First Amendment protects the rights of individuals to speak anonymously both offline and online alike. *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) ("The right to speak anonymously extends to speech via the Internet."); *see generally Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 853 (1997). "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas," and individuals "who have committed no wrongdoing should be free to participate in online forums without fear that their identity will be exposed under the authority of the court." *2TheMart.com Inc.*, 140 F. Supp. 2d at 1092. Yet the right to speak anonymously on the Internet is not without its limits and does not protect speech that otherwise would be unprotected. *USA Techs., Inc. v. Doe*, __ F. Supp. 2d __, No. C09-80275 SI, 2010 WL 1980242, at *3 (N.D. Cal. May 17, 2010); *Doe I v. Individuals*, 561 F. Supp. 2d 249, 254 (D. Conn. 2008).

Subpoenas seeking the identity of anonymous individuals raise First Amendment concerns. *Doe I*, 561 F. Supp. 2d at 254; *2TheMart.com Inc.*, 140 F. Supp. 2d at 1091-92. With the expansion of online expression, the use of subpoenas to unmask anonymous Internet speakers in connection with civil lawsuits is on the rise. *See generally* Ashley I. Kissinger & Katharine Larsen, *Untangling the Legal Labyrinth: Protections for Anonymous Online Speech*, 13 No. 9 J. INTERNET L. 1 (2010); Nathaniel Gleicher, Note, *John Doe Subpoenas: Toward a Consistent Legal Standard*, 118 YALE L.J. 320 (2008). The use of subpoenas in the context of the Internet raises serious concerns because it threatens to cause "a significant chilling effect on Internet communications and thus on basic First Amendment rights." *2TheMart.com Inc.*, 140 F. Supp. 2d at 1093.

In recent years, courts have been called on to balance one individual's First Amendment interests in anonymous Internet speech against another individual's interests in addressing the harm caused by tortious or actionable speech. As of yet, neither the Supreme Court nor the Ninth Circuit has addressed this issue. District courts and state courts, however, have adopted a range of different tests—some permissive, some stringent—designed to account for the competing interests in cases involving claims for defamation, trademark infringement, and copyright infringement.

The case law, though still in development, has begun to coalesce around the basic framework of the test articulated in *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001). In *Dendrite*, the plaintiff brought suit for defamation arising out of postings by anonymous defendants on an Internet message board. The plaintiff sought to compel the internet service provider to disclose the identities of the anonymous

defendants, and one defendant responded by filing a motion to quash. The plaintiff argued, *inter alia*, that its defamation claim against the defendant was sufficient to withstand a motion to dismiss and, accordingly, that discovery of the defendant's identity was warranted. *Id*. at 764. The *Dendrite* court disagreed, and held that a plaintiff seeking such discovery must (1) give notice; (2) identify the exact statements that constitute allegedly actionable speech; (3) establish a prima facie cause of action against the defendant based on the complaint and all information provided to the court; and (4) "produce sufficient evidence supporting each element of its cause of action, on a prima facie basis, prior to a court ordering the disclosure of the identity of the unnamed defendant." *Id*. at 760. Additionally, if the plaintiff makes out a prima facie cause of action, the court must (5) "balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." *Id*. at 760-61. Some courts have adopted the *Dendrite* test wholesale, *e.g.*, *Mortgage Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.*, __ A.2d __, No. 2009-262, 2010 WL 1791274, at *7 (N.H. May 6, 2010), and *Indep. Newspapers, Inc. v. Brodie*, 966 A.2d 432, 456 (Md. 2009), while other courts have adopted streamlined versions of the *Dendrite* test, *e.g.*, *Doe v. Cahill*, 884 A.2d 451, 461 (Del. 2005) ("the plaintiff must make reasonable efforts to notify the defendant and must satisfy the summary judgment standard"), *USA Techs., Inc.*, __ F. Supp. 2d __, 2010 WL 1980242, at *4 (requiring (1) "the plaintiff to adduce, without the aid of discovery, competent evidence addressing all of the inferences of fact essential to support a prima facie case on

ORDER- 6

1  all elements of a claim" and (2) the court to balance the competing interests), and
2  *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975-76 (N.D. Cal. 2005)
3  (same).
4       This court agrees with Doe and the weight of authority that a *Dendrite*-style test is
5  appropriate to safeguard the First Amendment interests at stake in this action.  Doe is
6  engaged in a form of anonymous Internet speech by discussing and criticizing SaleHoo
7  on the <www.salehoosucks.com> website.  Regardless of whether SaleHoo ultimately
8  establishes that Doe's speech is not entitled to First Amendment protection under
9  trademark and defamation law, the purpose of a *Dendrite*-style test is to assess the
10 viability of SaleHoo's claims before casting aside Doe's anonymity, which once lost
11 cannot be recovered.  SaleHoo contends that a *Dendrite*-style test is unnecessary here
12 because Doe is not the actual speaker. (Resp. (Dkt. # 13) at 3.)  This contention,
13 however, is belied by the amended complaint, which targets Doe for having "created,
14 endorsed and/or knowingly published" defamatory statements and for making other
15 misleading statements throughout the website. (Am. Compl. ¶¶ 13, 17, 20-21.)  Without
16 more, the court is not persuaded that SaleHoo may sidestep application of a *Dendrite*-
17 style test.  The court is also not persuaded that Doe's status as the defendant, rather than
18 as a third party, mandates a different analysis.  Though this court's decision in
19 *2TheMart.com Inc.* involved a subpoena directed at a third-party witness, the case law
20 principally addresses the issue of subpoenas seeking to identify anonymous defendants.
21 *See, e.g., Dendrite*, 775 A.2d at 760.
22

Having reviewed *Dendrite* and the case law in this area, the court concludes that, at a minimum, a plaintiff seeking to use a subpoena to discover the identity of a defendant in connection with anonymous Internet speech must satisfy three basic requirements, subject to balancing by the court. This is a case-by-case analysis. The court intends only to sketch the general framework that it will follow. The precise contours of each factor must be explored in other circumstances, and consideration of additional factors may ultimately prove appropriate depending on the facts of a particular case.

To begin with, the plaintiff must undertake reasonable efforts to give the defendant adequate notice of the attempt to discover his or her identity and provide a reasonable opportunity to respond. *Mobilisa, Inc. v. Doe,* 170 P.3d 712, 721 (Ariz. Ct. App. 2007). This requirement enjoys general acceptance by the courts, *see, e.g., Doe I*, 561 F. Supp. 2d at 254, *Indep. Newspapers, Inc.*, 966 A.2d at 456, and *Cahill*, 884 A.2d at 461, and promotes a full and fair consideration of the issues.

Next, the plaintiff must, in general, allege a facially valid cause of action and produce prima facie evidence to support all of the elements of the cause of action within his or her control.[1] *See USA Techs., Inc.*, __ F. Supp. 2d. __, 2010 WL 1980242, at *4; *Doe I*, 561 F. Supp. 2d at 256; *Dendrite Int'l, Inc.*, 775 A.2d at 760. Courts agree that the strength of the plaintiff's case must be evaluated before he or she is permitted to unmask

---

[1] The court has no occasion to explore the distinctions that may arise when the plaintiff is a public figure; however, at least one commentator has suggested that a different standard should apply in such circumstances. *See* Gleicher, *supra*, at 334-36.

an anonymous defendant by subpoena. *See Krinsky v. Doe 6*, 72 Cal. Rptr. 3d 231, 241-44 (Cal. Ct. App. 2008) (reviewing the various standards). As one court emphasized: "It is not enough for a plaintiff simply to plead and pray. Allegation and speculation are insufficient." *Highfields Capital Mgmt., L.P.*, 385 F. Supp. 2d at 975. Yet courts have articulated a range of different standards with respect to this critical step. At the lenient end of the spectrum, some courts have held that the plaintiff need only make a showing of good faith. *E.g., In re America Online, Inc.*, 52 Va. Cir. 26, 2000 WL 1210372, at *8 (Va. Cir. Ct. 2000). Other courts have evaluated the plaintiff's claims under a motion to dismiss standard. *E.g., Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 579 (N.D. Cal. 1999). Finally, at the stringent end of the spectrum, courts have required the plaintiff to submit evidence sufficient to defeat summary judgment, *e.g., Doe v. Cahill*, 884 A.2d 451, 461 (Del. 2005), and *Best W. Int'l, Inc. v. Doe*, No. CV-06-1537-PHX-DGC, 2006 WL 2091695, at *4 (D. Ariz. July 25, 2006), or to make a prima facie evidentiary showing, *e.g., Highfields Capital Mgmt., L.P.*, 385 F. Supp. 2d at 975, and *Dendrite*, 775 A.2d at 760-61. "At bottom . . . the prima facie and summary judgment tests impose similar burdens in terms of how strong a case the plaintiff must present to the court, essentially requiring sufficient evidence to create a jury issue on the underlying claim, and both tests are very speech protective." Kissinger & Larsen, *supra*, at 19.

Having reviewed these standards, the court finds the prima facie standard is appropriate in order to guarantee that the plaintiff has brought viable claims in connection with his or her attempt to unmask the anonymous defendant. *See USA Techs., Inc.*, __ F. Supp. 2d. __, 2010 WL 1980242, at *4. "Under such a standard, '[w]hen there is a factual

and legal basis for believing [actionable speech] has occurred, the writer's message will not be protected by the First Amendment.'" *Doe I*, 561 F. Supp. 2d at 256 (quoting *Krinsky*, 72 Cal. Rptr. 3d at 245). Further, by limiting the plaintiff's burden to those elements within his or her control, this standard recognizes the potential evidentiary limitations associated with certain causes of action. "[A] plaintiff at an early stage of the litigation may not possess information about the role played by particular defendants or other evidence that normally would be obtained through discovery." *Best W. Int'l, Inc.*, 2006 WL 2091695, at *5. Nevertheless, the plaintiff must still allege facially valid claims even if evidence is not available as to each element.

The plaintiff also must demonstrate that the specific information sought by subpoena is necessary to identify the defendant and that the defendant's identity is relevant to the plaintiff's case. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010); *Doe 1*, 561 F. Supp. 2d at 255; *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004); *UMG Recordings, Inc. v. Does 1-4*, No. 06-0652 SBA (EMC), 2006 WL 1343597, at *2-3 (N.D. Cal. Mar. 6, 2006); *cf. 2TheMart.com Inc.*, 140 F. Supp. 2d at 1095. This factor may also include consideration of whether the plaintiff has alternative means to obtain the information sought by subpoena. *See Arista Records, LLC*, 604 F.3d at 119; *Sony Music Entm't Inc.*, 326 F. Supp. 2d at 566.

Finally, where the preceding three factors do not present a clear outcome, the court should balance the interests of the parties. *See USA Techs., Inc.*, __ F. Supp. 2d __, 2010 WL 1980242, at *4; *Highfields Capital Mgmt., L.P.*, 385 F. Supp. 2d at 976. In doing so, the court should "assess and compare the magnitude of the harms that would be caused to

the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant." *Highfields Capital Mgmt., L.P.*, 385 F. Supp. 2d at 976.

With the foregoing test in mind, the court turns to SaleHoo's claims. The court begins with the second factor because Doe has received notice of the subpoena and an opportunity to be heard, and there appears to be no dispute that Doe's identity is relevant to this action. Therefore, the court asks: has SaleHoo alleged facially valid claims and produced prima facie evidence to support all of the elements of these claims within its control? The answer, on this record, is no.

### 1. Trademark Infringement and Lanham Act Claims

To prevail on its claims for trademark infringement, false designation of origin, and unfair competition, SaleHoo must show, among other things, that it holds a protectable mark and that Doe made commercial use of the mark or a similar mark in a manner that caused confusion in the minds of consumers about the origin of the goods or services in question. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008); *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). In its complaint, SaleHoo alleges that Doe operates the <www.salehoosucks.com> website as an Internet gripe site when in fact the website is designed to direct potential SaleHoo customers to other websites for commercial gain. (Am. Compl. ¶¶ 7-19.) SaleHoo alleges that Doe's use of the SALEHOO mark is "confusingly similar" to its own. (Am. Compl. ¶ 7.) In its motion to quash, Doe argues that SaleHoo has not met its burden to present evidence regarding likelihood of confusion and commercial use. (Mot.

at 8-10.) SaleHoo challenges Doe's legal arguments, but does not point to evidence in the record to support these elements of its claims. (Resp. at 6, 8-11.)

Here, the court finds that SaleHoo has not met its burden to make a prima facie showing with respect to likelihood of confusion. Doe plainly uses "SaleHoo" in its domain name and throughout its website, but it is not evident how Doe's use is confusing or whether it has caused actual confusion. (Am. Comp. ¶ 7.) The court is particularly mindful that the average Internet user is unlikely to believe that <www.salehoosucks.com> is either an official SaleHoo website or in any way sponsored or approved by SaleHoo. *See Taubman Co. v. Webfeats*, 319 F.3d 770, 777-78 (6th Cir. 2003); *Lucent Techs., Inc. v. Lucentsucks.com*, 95 F. Supp. 2d 528, 535-36 (E.D. Va. 2000); *Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161, 1165 n. 2 (C.D. Cal. 1998) ("no reasonably prudent Internet user would believe that 'Ballysucks.com' is the official Bally site or is sponsored by Bally"). Similarly, it is not evident that the content of the website is likely to cause confusion. Without more, SaleHoo has not made an adequate showing to overcome Doe's motion to quash with respect to these claims. *See Highfields Capital Mgmt., L.P.*, 385 F. Supp. 2d at 977-79 (quashing a subpoena to identify an anonymous defendant where the plaintiff failed to adduce evidence sufficient to make a prima facie showing as to likelihood of confusion).

    2. <u>Defamation Claim</u>

Under Washington law, to make out a prima facie case of defamation, a plaintiff must show falsity, an unprivileged communication, fault, and damages. *Mohr v. Grant*,

1  108 P.3d 768, 822 (Wash. 2005). In its amended complaint, SaleHoo alleges that Doe,

2  by way of example, has

3      stated that SaleHoo's business is a 'scam;' stated that SaleHoo and its legal counsel 'threaten anyone who posts information not favorable to SaleHoo
4      on the web with defamation suits;' falsely attributed untrue statements to SaleHoo personnel; and stated that SaleHoo personnel were either 'drunk'
5      or 'a pathological liar.'

6  (Am. Compl. ¶ 20.) SaleHoo then alleges in cursory fashion that the elements of a

7  defamation claim are satisfied. (*Id.* ¶ 21.) In its response, SaleHoo does not identify

8  evidence to support each element of its defamation claim, but instead rests on the

9  argument that it has alleged a viable defamation claim on the face of its amended

10  complaint. Without more, SaleHoo has not made an adequate showing to overcome

11  Doe's motion to quash with respect to its defamation claim.

12      Having concluded that SaleHoo has not satisfied its burden, the court grants Doe's

13  motion to quash. The court, however, denies Doe's request to dismiss the amended

14  complaint. SaleHoo may have viable infringement and defamation claims against Doe,

15  and the question of whether SaleHoo's claims would survive a properly-noted motion to

16  dismiss or motion for summary judgment is a question not presently before the court.

17

18

19

20

21

22

## V. CONCLUSION

For the foregoing reasons, the court GRANTS Doe's motion to quash (Dkt. # 9) and QUASHES the subpoena served on GoDaddy.

Dated this 12th day of July, 2010.

JAMES L. ROBART
United States District Judge

ORDER- 14